# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JANE AND JOHN DOE, individually and as next friends of JANIE DOE 1 AND JANIE DOE 2, minor children, | § § § § | |
| *Plaintiffs*, | § | |
| v. | § § | Civil Action No. 4:22-CV-00814 |
| | § | Judge Mazzant |
| PROSPER INDEPENDENT SCHOOL DISTRICT, HOLLY FERGUSON, ANNAMARIE HAMRICK, and ANNETTE PANIAGUA ex rel. the ESTATE OF FRANK PANIAGUA, | § § § § § § § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Prosper Independent School District's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #54). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

During the 2021–2022 school year, eight-year-old Janie Doe 1 and six-year-old Janie Doe 2 (the "Doe Children") attended school in the Prosper Independent School District ("Prosper ISD"). The Doe Children rode a bus driven by Frank Paniagua ("Paniagua") to school three to four times a week.

Plaintiffs allege that Paniagua, every morning after picking up the Doe Children but before picking up other children, would drive the bus off route and make an unscheduled stop. During this stop, Paniagua would touch the Doe Children's chests, vaginas, and anuses under the guise of

readjusting their seatbelts. According to the allegations, the sexual abuse was captured on school-bus surveillance video.

Plaintiffs allege that after the Doe Children disclosed the abuse to their mother, Jane Doe, she promptly reported it to Prosper ISD's Transportation Department and the Prosper ISD Police Department. On May 9, 2022, Prosper ISD police extracted the surveillance video from Paniagua's bus, reviewed it, and then sent the footage to Prosper Police Department. The next day, the Doe Children underwent forensic interviews. Soon after, Paniagua was arrested on charges of aggravated sexual assault of a child, continuous sexual abuse of a child victim under 14, and indecency with a child sexual contact. Paniagua attempted suicide by jumping off the second floor of the jail, paralyzing himself, and later died on June 10, 2022. Though it is unclear exactly when, Plaintiffs also allege that Prosper ISD relied on the video evidence as a basis to fire Paniagua.

Jane and John Doe filed this lawsuit on behalf of themselves and the Doe Children, seeking to hold Defendants Prosper ISD, Holly Ferguson (the Superintendent of Prosper ISD), Annamarie Hamrick (the former Director of Prosper ISD Transportation Department), and the Estate of Frank Paniagua responsible for Paniagua's actions (Dkt. #27). Relevant to the present motions, Plaintiffs accuse Prosper ISD of violating 42 U.S.C. § 1983 and 20 U.S.C. § 1681 ("Title IX"). In addition, Plaintiffs bring state law causes of action for breach of fiduciary duty, fraud by nondisclosure, negligence, and gross negligence against Prosper ISD.

On January 19, 2023, Prosper ISD filed the present motion to dismiss (Dkt. #54). On February 2, 2023, Plaintiffs filed their response in opposition to Prosper ISD's motion (Dkt. #58). On February 23, 2023, Prosper ISD filed its reply to Plaintiffs' response (Dkt. #54).

## LEGAL STANDARD

### I.        12(b)(6) Standard

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

3

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.    12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d

548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## ANALYSIS

Prosper ISD argues that the Court should grant its motion to dismiss for five reasons. First, Prosper ISD argues that it is entitled to governmental immunity from Plaintiffs' tort claims. Next, Prosper ISD argues that Jane and John Doe lack standing to assert individual claims under Title IX and § 1983. Third, Prosper ISD argues that Plaintiffs lack standing to pursue any declaratory relief. Fourth, Prosper ISD argues that several categories of damages sought by Plaintiffs are not available under the Texas Tort Claims Act ("TTCA"), Title IX, or § 1983. Finally, Prosper ISD argues that Plaintiffs failed to state a claim upon which relief can be granted under Title IX or § 1983. Plaintiffs, for their part, argue that dismissal at this stage of the lawsuit is premature.

Except for the Title IX claims, the Court agrees with Prosper ISD that Plaintiffs have not alleged cognizable claims against Prosper ISD. Taking the issues out of turn, the Court will start with whether Plaintiffs may pursue any tort causes of action against Prosper ISD. The Court will then turn to the sufficiency of Plaintiffs' Title IX allegations. Third, the Court will review the

sufficiency of Plaintiffs' § 1983 allegations. Finally, the Court will turn to whether there is standing for the Court to award declaratory relief.

## I.      Plaintiffs' Tort Claims

Plaintiffs bring several tort causes of action against Prosper ISD: breach of fiduciary duty, fraud, negligence, and gross negligence. Prosper ISD is a governmental unit; therefore, it "is immune from liability for [Plaintiffs'] injur[ies] unless that immunity has been waived by the Texas Tort Claims Act." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (quoting TEX. CIV. PRAC. & REM. CODE §§ 101.001(2)(B), 101.025, 101.051). With the principles of the TTCA in mind, Prosper ISD argues that, under the circumstances of this case, the TTCA does not waive immunity. More specifically, Prosper ISD argues that (1) it cannot be liable for the intentional torts of an employee and (2) it cannot be liable for any negligent acts or omissions because Paniagua was not operating or using a motor vehicle. Plaintiffs counterargues that Paniagua was using a motor vehicle when he sexually assaulted Jane and Jane Doe, so § 101.021 waives Prosper ISD's governmental immunity, at least for its negligence and gross negligence claims. As to Plaintiffs' intentional tort claims, however, Plaintiffs seem to concede that the TTCA does not waive liability. The Court agrees with Prosper ISD that all Plaintiffs' tort claims must be dismissed.

### A. Plaintiffs' Intentional Tort Causes of Action are Barred by Governmental Immunity.

Starting with Plaintiffs' intentional tort causes of action, Prosper ISD's governmental immunity is not waived. Section 101.057 prohibits claims against a governmental entity if those claims "arise[] out of assault, battery, false imprisonment, or any other intentional tort . . . ." TEX. CIV. PRAC. REM. CODE § 101.057(2). So, while the TTCA "'waives governmental immunity for

certain negligent conduct, [it] does not waive immunity for claims arising out of intentional torts.'"
*Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (quoting *City of Watauga v. Gordon*,
434 S.W.3d 586, 594 (Tex. 2014); Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.057); *see also*
*Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009) ("the TTCA does not apply to claims
arising out of an intentional tort."). Indeed, "'intentional conduct, no matter how it is [pleaded],
falls under the TTCA's sovereign immunity waiver exception.'" *Id.* (quoting *Tex. Dep't of Pub.
Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)). Accordingly, Plaintiffs' breach of fiduciary duty
and fraud claims must be dismissed with prejudice.

### B.  Plaintiffs' Negligence and Gross Negligence Claims.

Next, the Court turns to Plaintiffs' negligence and gross negligence causes of action. As
with Plaintiffs' intentional tort claims, Plaintiffs' negligence claims are barred by governmental
immunity. According to § 101.021 of the TTCA:

> a governmental unit in the state is liable for
>
>> (1) property damage, personal injury, and death proximately caused by the
>> wrongful act or omission or the negligence of an employee acting within his
>> scope of employment if:
>>
>>> (A) the property damage, personal injury, or death arises from the
>>> operation or use of a motor-driven vehicle or motor-driven
>>> equipment; and
>>>
>>> (B) the employee would be personally liable to the claimant
>>> according to Texas law; and
>>
>> (2) personal injury and death so caused by a condition or use of tangible
>> personal or real property if the governmental unit would, were it a private
>> person, be liable to the claimant according to Texas law.

Tex. Civ. Rem. Code § 101.021. As is apparent, this waiver of immunity provided by the
TTCA is limited. *See id.*; *see also LeLeaux*, 835 S.W.2d at 51 ("[Section 101.021's] waiver of

immunity is a limited one."). That is, under § 101.021, Prosper ISD, a governmental entity in Texas, is only liable for the Doe Children's personal injuries if their injuries arise from the operation or use of a motor-driven vehicle. TEX. CIV. PRAC. REM. CODE § 101.021.

A plaintiff's injuries "arise from" the operation or use of a motor vehicle when there is "a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 928 (Tex. 2015). The Texas Supreme Court has "described the threshold as something more than actual cause but less than proximate cause." *Id.* (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)). A nexus requires "more than mere involvement of property." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (citing *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998)). Rather, the vehicle's use must actually *cause* the injury. *Id.* (cleaned up) (internal citations omitted) (emphasis added); *see also Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (the TTCA "requires the property's condition or use to cause the injury"). To that end, "the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Whitley*, 104 S.W.3d at 543 (quoting *Bossley*, 968 S.W.2d at 343).

Plaintiffs argue that because Paniagua used the school bus as the location from which he sexually assaulted the Doe Children, the "use" and "nexus" requirements under § 101.021 are met. The Court is not persuaded. The school bus was not the device used to cause the Doe Children's injuries. Instead, the school bus merely furnished the condition that made the Doe Children's injuries possible. As the Court just pointed out, "the operation or use of a motor vehicle

8

'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Bossley*, 968 S.W.2d at 343).

Another district court in the Fifth Circuit recently dealt with a similar issue. *Limon v. City of Balcones Heights*, 485 F. Supp. 2d 751 (W.D. Tex. 2007). In *Limon*, a police officer raped Limon, a prisoner, in the back of his patrol car while transporting her. *Id.* at 753. Limon sued the City of Balcones Heights, alleging that, among other things, the City was liable under a negligence theory because her injuries arose from the use of a motor-driven vehicle. *Id.* at 756. The district court disagreed, reasoning that Limon could not establish the requisite nexus between the use of the patrol car and her injuries. *Id.* at 756–57. The court reached that conclusion because (1) Limon's injuries were caused by the police officer's intentional tort, not a negligent act, and (2) Limon's injuries did not arise from the use of a motor-driven vehicle. *Id.* Thus, the court held that § 101.021 did not waive the City's immunity, and Limon's state-law tort claims were barred by the TTCA.

The court's conclusion in *Limon* relies on and comports with Texas caselaw on the issue as well. *E.g., Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786 (Tex. App.—Houston [14th Dist.] 1997), *rev'd on other grounds*, 5 S.W.3d 654 (Tex. 1999). [1] In *Holder*, a Houston police officer stopped Holder for a traffic violation and instructed Holder to follow him to a parking garage. *Id.* at 789. Once in the garage, the officer sexually assaulted Holder in his squad car. *Id.* Holder sued the City of Houston for negligently supervising and monitoring the officer and his use of the City's patrol car. *Id.* Similar to Plaintiffs in this case, Holder argued that governmental immunity was waived under § 101.021 because the assault took place in the police car, which is a motor-drive vehicle. *Id.*

---

[1] On appeal to the Texas Supreme Court, Holder did not request that the Texas Supreme Court review the lower court's holding that her claims against the City were barred by governmental immunity. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 n.2 (Tex. 1999).

at 805. The trial court granted summary judgment in favor of the City, and the court of appeals affirmed. *Id.* On appeal, the court of appeals agreed with the trial court that the link, or nexus, between the use of the squad car and Holder's injury was insufficient to bring the claim within the TTCA's waiver of immunity. *Id.* at 807. In other words, the appellate court concluded that the "required causal nexus" for liability under the TTCA was missing, as the use of the squad car was not the "direct device" causing Holder's injury. *Id.* Instead, it was the police officer's intentional tort that caused Holder's injury. *Id.*

In sum, *Limon* and *Holder* stand for the proposition that sexual assault committed by a government employee inside of a motor vehicle does not satisfy the required causal nexus to constitute "use" of a motor vehicle. The relevant facts in the present case mirror the facts in *Limon* and *Holder*. Here, Plaintiffs allege Paniagua used the bus to assault the Doe Children by (1) taking them off the scheduled bus route and making unscheduled stops along the scheduled bus route to molest them, (2) disabling the bus's GPS tracker to conceal when he was making diversions from his route or unscheduled stops, and (3) manipulating the Doe Children's seatbelts as a pretext for sexually molesting them (Dkt. #27 at p. 12). Applying the same reasoning utilized in *Limon* and *Holder*, the school bus was not the "direct device" used to harm the Doe Children. Rather, the Doe Children's injuries arose from Paniagua's intentional tort of sexual assault, and the school bus simply furnished the condition that made Paniagua's intentional tort possible. The Doe Children's injuries did not arise from the operation or use of a motor-driven vehicle. Therefore, § 101.021 of the TTCA does not waive immunity in this instance.

Accordingly, § 101.021 of the TTCA does not waive Prosper ISD's immunity, and the Court lacks subject matter jurisdiction over Plaintiffs' tort claims against Prosper ISD.

Furthermore, because the Court is dismissing all of Plaintiffs' tort claims, the Court need not determine what categories of damages Plaintiffs would be entitled to under the TTCA.

## II.     Plaintiffs' Title IX Claims

Plaintiffs also seek relief pursuant to Title IX. Title IX expressly provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "prohibits sex discrimination by recipients of federal educational funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Title IX implies a private right of action encompassing intentional sex discrimination in the form of a federal educational funding recipient's deliberate indifference to the sexual harassment of a student by another student. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

Prosper ISD's argument as to why the Court should dismiss Plaintiffs' Title IX claims is five-fold. First, Prosper ISD argues that all of Jane and John Doe's individual claims under Title IX should be dismissed because the Court lacks jurisdiction over those claims. Second, Prosper ISD argues that the Doe Children's claims under Title IX are insufficient because there is no one in the district who had actual knowledge of the abuse. Third, Prosper ISD further argues that the Doe Children's claims under Title IX are insufficient because the Fifth Circuit does not recognize a heightened risk claim under Title IX. Next, Prosper ISD argues that exemplary damages are not available under Title IX. Finally, Prosper ISD argues that emotional distress damages are also unavailable under Title IX. The Court will address each issue in turn.

### A.  Whether Jane and John Doe Have Individual Claims Under Title IX

Prosper ISD argues that, insofar as John and Jane Doe appear to bring individual claims under Title IX, Plaintiffs' Title IX claims fail. The Court agrees. John and Jane Doe, as the parents

of the Doe Children, lack standing to bring Title IX claims on behalf of themselves. As the Fifth

Circuit pointed out in *Rowinsky v. Bryan I.S.D.*:

> nothing in the statutory language provides [a parent] with a personal claim under
> title IX.  Even assuming that title IX protects persons other than students and
> employees, [the parent] has failed [to] assert that she was excluded from
> participation, denied the benefits of, or subjected to discrimination under any
> education program or activity.  Absent such a claim, the plain language of title IX
> does not support a cause of action by [the parent].

80 F.3d 1006, 1010 n. 4 (5th Cir.), *cert. denied*, 519 U.S. 861 (1996); *see also A.W. v. Humble Indep.*

*Sch. Dist.*, 25 F. Supp. 3d 973, 985 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep.*

*Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (holding that parents are precluded from bringing individual

Title IX claims after the Fifth Circuit's holding in *Rowinsky*). Here, John and Jane Doe are not

students or employees of Prosper ISD. Nor are John and Jane Doe asserting that they were

excluded from participation, denied the benefits of, or subjected to discrimination under an

educational program or activity.

Plaintiffs' complaint does not contain "sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face'" for John and Jane Doe under Title IX. *See Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Thus, to the extent that John and Jane Doe assert

Title IX claims on behalf of themselves, the Court dismisses those claims.

### B.  Whether Plaintiffs Have Sufficiently Alleged Title IX Claims for the Doe Children

Plaintiffs allege that Prosper ISD is liable for the Doe Children's injuries under Title IX.

Title IX holds schools liable for intentional sex discrimination, including discrimination in the form

of sexual harassment. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358, 358 n.18 (5th Cir. 2020).

To hold a school district liable under Title IX, a plaintiff must prove that there was "actual notice

[of the discrimination] to an 'appropriate person' and 'an opportunity for voluntary compliance.'"

12

*Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 275 (1998); citing 20 U.S.C. § 1682).

Prosper ISD argues that the Court should dismiss the remaining Title IX claims because Plaintiffs have failed to state a claim upon which relief can be granted. More specifically, Prosper ISD argues that Plaintiffs have not alleged actual notice and that Plaintiffs' Title IX heightened risk claim is not viable in the Fifth Circuit. The Court will address both of Prosper ISD's arguments in turn.

### 1.  Whether Plaintiffs Sufficiently Allege Actual Notice

Essentially, there are two parts to Title IX liability. First, a plaintiff must show "actual knowledge." Under *Gebser*, the Supreme Court held that a school district cannot be liable in damages for a teacher's sexual harassment of a student unless "an official [with] authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination . . . and fails adequately to respond." 524 U.S. at 290. For the district to have knowledge, it is not enough that any employee knew of the harassment; it must be someone authorized to rectify it. *Id.* Second, a plaintiff must show "deliberate indifference." That is, "even if the school district knew about employee-on-student misconduct, the district cannot be liable unless its response amounted to 'deliberate indifference.'" *Edgewood Indep. Sch. Dist.*, 964 F.3d at 358 (citing *Gebser*, 524 U.S. at 290). The deliberate indifference standard is high. *Id.* "For example, liability does not attach where the official with authority to take corrective action responds reasonably to a risk of harm, 'even if the harm ultimately was not averted.'" *Id.*

As discussed, Prosper ISD argues that Plaintiffs have not alleged actual notice of the abuse. Plaintiffs counterargue that they did sufficiently plead actual notice because they pleaded that

Ferguson and Hamrick were "appropriate persons" who had actual knowledge of the discrimination. The Court agrees with Plaintiffs.

Prosper ISD contends that Plaintiffs have only alleged constructive notice of the abuse. The Court agrees that the actual notice standard is not met by alleging that the Defendants *should have known* that Paniagua posed a substantial risk of sexual abuse. *See id.* at 364. To be sure, that is constructive notice, not actual notice. *See id.*; *see also James v. Antarctic Mech. Servs.*, No. 3:18-CV-678, 2020 U.S. Dist. LEXIS 2116, at *8 (S.D. Miss. Jan. 7, 2020) ("[C]onstructive notice is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it."). The Fifth Circuit, indeed, pointed out in *Edgewood* that the plaintiff's "argument [was] constructive notice by another name." *Edgewood Indep. Sch. Dist.*, 964 F.3d at 364. And the Supreme Court has clearly rejected that standard in favor of actual notice." *Id.*

But here Plaintiffs have not merely pleaded constructive notice. Plaintiffs allege that Prosper ISD had actual knowledge of the abuse and that, by virtue of Ferguson and Hamrick, Prosper ISD was "actually, subjectively aware of Paniagua's abuse of [the Doe Children] but failed to act in response" (*see* Dkt. #27 at pp. 10, 24–25). Construed in a light most favorable to Plaintiffs, these factual allegations show that Prosper ISD officials learned that Paniagua was sexually abusing the Doe Children during the period in which it was ongoing. Such knowledge was allegedly acquired through observing onboard bus surveillance videos and anomalous GPS data (*see* Dkt. #27 at pp. 10, 24–25). The allegations show further that Prosper ISD demonstrated deliberate indifference toward the discrimination suffered by the Doe Children because Prosper ISD officials,

who had authority to rectify the situation, deliberately refused to intervene despite knowing about the ongoing sexual abuse. Where a school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances," Title IX's deliberate indifference element is satisfied. *Davis.*, 526 U.S. at 648. In the Court's view, the alleged apathetic inaction on the part of Prosper ISD was clearly unreasonable, thus satisfying this standard.

The Court finds that Plaintiffs' Second Amended Complaint contains sufficient factual matter, accepted as true, to state plausible Title IX claims on behalf of the Doe Children. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, Prosper ISD's motion to dismiss is denied on Plaintiffs' non-heightened-risk Title IX claim.

### 2.   Whether a "Heightened Risk" Claim is Recognized in the Fifth Circuit

Plaintiffs also allege a "heightened risk" claim under Title IX. However, as Prosper ISD points out, the Fifth Circuit does not recognize heightened risk claims. In *Poloceno v. Dallas Independent School District*, the Fifth Circuit stated that

> We have never recognized or adopted a Title IX theory of liability based on a general "heightened risk" of sex discrimination, and we decline to do so. Moreover, the cases from our sister circuits that recognize the "heightened risk" analysis limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here.

826 F. App'x 359 (5th Cir. 2020). Plaintiffs in their response do not dispute this point. Accordingly, the Court agrees that Plaintiffs' heightened risk theory is not available in the Fifth Circuit.  Therefore, Plaintiffs' Title IX claim to the extent it is based on heightened risk should be dismissed.

### C.  Whether the Doe Children Can Recover Exemplary Damages Under Title IX

Next, Prosper ISD argues the Court should prohibit Plaintiffs from recovering any exemplary damages under Title IX. However, Plaintiffs only request exemplary damages under

Chapter 41 of the Texas Civil Practice & Remedies Code and § 1983. Because Plaintiffs do not seek to recover exemplary damages under Title IX, this argument is moot.

### D. Whether the Doe Children Can Recover Emotional Distress Damages Under Title IX

Plaintiffs further allege that they are entitled to emotional distress damages under Title IX. Prosper ISD, however, argues the Court should prohibit Plaintiffs from recovering any damages for emotional distress under Title IX because emotional distress damages are not available under Title IX. The Court agrees. In light of the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller PLLC*, emotional distress damages are no longer available under anti-discriminatory legislation passed pursuant to the Spending Clause. 142 S.Ct. 1562, 1572 (2022).

As the Supreme Court pointed out in *Cummings*, Congress passed Title IX legislation pursuant to its power granted by the Spending Clause of the Constitution. *Id.* at 1568. Spending Clause legislation operates based on consent and is analogous to a contract. *Id.* at 1570. That is, to receive federal funding under the Spending Clause, recipients such as Prosper ISD must agree to comply with federally imposed conditions. *Id.* Furthermore, a particular remedy is available in a Title IX action only if the recipient of the funds is "on notice" that, by accepting federal funding, it exposes itself to liability of that nature. *Id.* As such, a funding recipient is on notice of those damages explicitly provided in the legislation and those remedies traditionally available in suits for breach of contract. *Id.* at 1571.

Generally, emotional distress damages are not available for breach of contract. *Id.* at 1565. And Title IX does not expressly provide for emotional distress damages. *Id.* For these reasons, the Supreme Court held that federal funding recipients do not have "clear notice" of liability for

emotional distress damages.  *Id.* at 1576. Accordingly, insofar as Plaintiffs request emotional distress damages under Title IX, Plaintiffs are not entitled to those damages.

### III.    Plaintiffs' § 1983 Claims—Municipal Liability

Plaintiffs allege that Prosper ISD is liable under § 1983 because it was consciously indifferent to Paniagua's deprivation of the Doe Children's liberty interest in their bodily integrity guaranteed to them by the Fifth Amendment and applied to the states through the Fourteenth Amendment.  More specifically, Plaintiffs allege that Prosper ISD violated § 1983 when it failed to maintain enforcement of sufficient policies to govern the hiring, training, supervision, and discipline of educators relative to protecting students and instead adhered to customs that directly led to the Doe Children's injuries. Furthermore, it appears, based on Plaintiffs' pleadings, that Plaintiffs also accuse Prosper ISD of infringing on John and Jane Doe's constitutional rights in violation of § 1983.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Though the Supreme Court at first "completely immunize[d] municipalities from suit under § 1983," *see Monroe v. Pape*, 365 U.S. 167 (1961), it later overturned this precedent, allowing municipality liability in particular circumstances. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695, 701 (1978).

Under *Monell*, to establish § 1983 liability against a municipality, a plaintiff must show that the protected right was violated by the execution of the municipality's policy or custom. The

theory of *respondeat superior* is insufficient to establish a municipality's liability in § 1983 cases. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell*, 436 U.S. at 691). Liability may be imposed "only where [the government entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, to hold the Prosper ISD liable under § 1983, Plaintiffs must establish that the "execution of [Defendant's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Deville*, 567 F.3d at 170. A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.  In sum, to hold a municipal entity such as Prosper ISD liable for constitutional violations committed by municipal officers, a plaintiff must prove three elements: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose moving force is the policy or custom."  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

### A.  Whether Jane and John Doe Have Individual Claims Under § 1983

Starting with John and Jane Doe's individual claims, Prosper ISD argues that, to the extent John and Jane Doe bring individual claims under § 1983, those claims fail.  According to Prosper ISD, John and Jane Doe, as the parents of the Doe Children, lack standing to bring § 1983 claims on behalf of themselves. The Court agrees. Standing requires John and Jane Doe to allege some violation of their personal rights, not simply a violation of the Doe Children's personal rights. *E.g., Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (collecting cases).

In this case, John and Jane Doe allege that Prosper ISD violated the Doe Children's rights, which caused John and Jane Doe pain, suffering, and emotional trauma. John and Jane Doe, however, have not put "forth facts implicating a right of recovery separate from the alleged

violations of [the Doe Children's] personal rights." *Martinez v. Maverick Cnty.*, 507 F. App'x 446, 448 n.1 (5th Cir. 2013) (citing *Coon*, 780 F.2d at 1160). Without more, John and Jane Doe's individual § 1983 claims fail. Accordingly, the Court agrees with Prosper ISD that John and Jane Doe's § 1983 claims must be dismissed.

### B. Whether Plaintiffs Have Sufficiently Alleged § 1983 Claims for the Doe Children

Next, Prosper ISD argues that the Court should dismiss the remaining § 1983 claims—the Doe Children's claims—because Plaintiffs have failed to state a claim upon which relief can be granted. As discussed, Plaintiffs must have alleged facts that, if later proven, would establish (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose moving force is the policy or custom." *Id.* Plaintiffs' complaint is, unfortunately, not the picture of clarity and lacks sufficient factual allegations to support municipal liability. Accordingly, the Court finds that Plaintiffs have not stated § 1983 claims upon which relief could be granted such that dismissing the Doe Children's claims is warranted.

#### 1. A Policymaker

State law determines whether a municipal official is a final policymaker for purposes of § 1983 liability. *Doe v. Dall. Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 562 (N.D. Tex. 2016) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In Texas, "the trustees of an independent school district 'have the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Id.* (quoting Tex. Educ. Code § 11.151(b)). Thus, Prosper ISD's Board of Trustees (the "Board") is the final policymaker. Here, Plaintiffs allege that the Board acts as the policymaker. Accordingly, Plaintiffs' theory of liability survives the first element of municipal liability.

However, Plaintiffs appear to further allege that Ferguson and Hamrick are also officials who act as policymakers. Plaintiffs must allege specific facts indicating that some of the Board's policymaking power was delegated to Ferguson and Hamrick. However, Plaintiffs provide no factual support for their assertion. Without more, the Court "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* at 562–63 (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)). Therefore, insofar as Plaintiffs allege that Ferguson or Hamrick are policymakers, those allegations fail.

### 2.  An Official Policy

Second, the Court must determine whether Plaintiffs have sufficiently pleaded an official policy. There are two kinds of "official policies": (1) "a policy statement formally announced by an official policymaker," and (2) a "persistent widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

To show that a custom or policy exists, Plaintiffs must show either "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or that "a final policymaker took a single unconstitutional action." *Id.* at 169 (emphasis omitted). A pattern of conduct is necessary only where the municipal actors are not policymakers. *Id.* It is not clear from Plaintiffs' complaint whether they are alleging the former, latter, or both. Regardless, Plaintiffs' allegations are conclusory and bareboned, and Plaintiffs, therefore, insufficiently allege an official policy. The Court will first address why Plaintiffs fail to allege a pattern of unconstitutional

conduct. The Court will then turn to why Plaintiffs fail to allege that a final policymaker took a single unconstitutional action.

### i.   Pattern of Unconstitutional Conduct

Plaintiffs allege that Prosper ISD is liable under § 1983 because it did not maintain sufficient policies and instead adhered to customs or practices that injured the Doe Children. Thus, Plaintiffs allege that the "official policy" in this case is a "persistent widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. Plaintiffs contend that Prosper ISD's unofficial, widespread customs or policies include:

> a) Overlooking or discounting complaints and information indicating inappropriate "grooming" or sexual behavior from bus drivers or other staff towards students;
>
> b) Not documenting and/or misclassifying complaints of sexually inappropriate conduct;
>
> c) Hiring, maintaining, and/or assigning educators, bus drivers, or other staff in disregard for information indicating prior inappropriate sexual behavior toward students;
>
> d) Not conducting sufficient investigations and following up on signs of inappropriate sexually based behavior between bus drivers or other staff and students; and/or
>
> e) Maintaining a tolerance for sexually inappropriate behavior between bus drivers or other staff and students

(Dkt. #27 at ¶ 53). Prosper ISD argues that the Court must dismiss Plaintiffs' municipal liability cause of action because Plaintiffs have not alleged any facts demonstrating a custom or practice sufficient to support municipal liability. The Court agrees. Plaintiffs' allegations do not amount to a "custom" as defined by caselaw.

In *Peterson v. City of Fort Worth*, the Fifth Circuit opined that "[a] pattern [or custom] is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" 588 F.3d 838, 850 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id.* (quoting *Webster*, 735 F.2d at 842); *see also Zarnow*, 614 F.3d at 169 ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."). To prove a custom is tantamount to official policy, a plaintiff must "demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 582). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

Additionally, "[a] pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). In the past, the Fifth Circuit has rejected plaintiffs' custom theories even when plaintiffs alleged numerous instances of similar constitutional violations. For example, in *Peterson*, the Fifth Circuit held that 27 instances of excessive force by police officers were insufficient to establish a pattern. 588 F.3d at 851. Likewise, in *Pineda v. City of Houston*, the Fifth Circuit held that eleven incidents

22

of warrantless entry did not support a pattern of unconstitutional warrantless entry. 291 F.3d 325 (5th Cir. 2002).

Here, Plaintiffs largely support their custom or practice theory with facts about how Prosper ISD responded to the incident in this case. Actions taken by Prosper ISD with respect to the at-issue incident are insufficient to demonstrate a pattern. *See Peterson*, 588 F.3d at 850. Aside from the current incident, Plaintiffs point to one other time that a Prosper ISD employee was allegedly sexually inappropriate.[2] Plaintiffs allege that in February 2020, Ferguson and Hamrick were made aware that a bus driver was exhibiting inappropriate behavior towards a student. Upon being notified of the behavior, the bus driver was reassigned to a new route. According to Plaintiffs, this incident supports their theory that the above-enumerated practices or customs allowed bus drivers to sexually assault students. However, a single isolated incident is insufficient to "demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* Without more, Plaintiffs' allegations, even taken as true and construed in a light most favorable to Plaintiffs, are insufficient. Thus, Plaintiffs have not alleged facts of a custom or practice that would support municipal liability.

### ii.    Single Instance of Unconstitutional Conduct by a Policymaker

Plaintiffs also appear to allege that there were single incidents of unconstitutional conduct by policymakers. As discussed, for a claim brought under § 1983, a "single instance" of unconstitutional conduct may form the basis of municipal liability when an official or entity with

---

[2] Plaintiffs' Second Amended Complaint does not expressly allege that this separate incident involved sexual behavior (*see* Dkt. #27 at p. 15). Instead, it alleges "inappropriate behavior" toward a young student and a bus driver's "grooming tactics," perhaps implying conduct of a sexual nature (*see* Dkt. #27 at p. 15). However, as discussed in the main body above, a pattern of conduct requires similarity and specificity. *See Peterson*, 588 F.3d at 851. Plaintiffs' allegations surrounding this separate incident, presumably involving a bus driver other than Paniagua, are vague and lack sufficient detail to allow the Court to draw a proper comparison to the main allegations at issue.

"final policymaking authority" performs the challenged act. *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019). Otherwise, when the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, a plaintiff cannot rely on a single instance of unconstitutional conduct. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

Plaintiffs name two individual officials, Ferguson and Hamrick, who failed to maintain enforcement of policies to govern the hiring, training, supervision, and discipline of educators relative to protecting students from the risk of sexual abuse. However, as the Court already determined, Plaintiffs fail to allege any facts which would indicate final decision-making authority was granted to Ferguson or Hamrick. Because Ferguson and Hamrick are non-policymaking employees, Plaintiffs cannot rely on their conduct. *See id*. Thus, the actions of these two individuals are unable to support a § 1983 claim based on an individual policymaker's conduct. Moreover, even if Ferguson and Hamrick were policymaking employees, Plaintiffs fail to allege any specific "single instance" of unconstitutional conduct by either Ferguson or Hamrick.  *See Webb*, 925 F.3d at 215.

Plaintiffs also appear to allege that Prosper ISD, acting through the Board, took individual actions that demonstrate single instances of unconstitutional conduct by a policymaker. However, Plaintiffs fail to point to any specific action by the Board or allege facts that would indicate a single individual on the Board acted unconstitutionally toward the Doe Children. Without such facts, Plaintiffs' conclusory statements fail to state a claim upon which the Court could grant relief.

### 3.   A Violation of Constitutional Rights Whose Moving Force is the Policy

Next, the Court must determine whether Plaintiffs have sufficiently pleaded "a violation of constitutional rights whose moving force is the policy or custom." *Zarnow*, 614 F.3d at 166. A plaintiff must establish that a governmental entity, through its deliberate conduct, was "the moving force behind the injury alleged," and must establish a direct causal link between the

governmental action and the deprivation of a federally protected right. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). The "moving force" standard is a higher burden than but-for causation. It requires a plaintiff to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights" and to show "the municipal action was taken with the requisite degree of culpability." *Id.* That is, a plaintiff must prove the municipality's actions reflected "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow [its] decision," which requires more than a showing of negligence. *Id.* at 411; *see also Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010).

Here, Plaintiffs failure to sufficiently allege the "official custom or policy" element further results in a failure to allege the "moving force" element sufficiently. As explained above, Plaintiffs have not alleged an official policy or custom. Therefore, they have not alleged this element either, so Plaintiffs did not allege the Doe Children's municipal liability claim such that relief can be granted.

"[W]here the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Here, Plaintiffs' custom policy arguments do not allow the Court to infer more than the mere possibility of unconstitutional customs or practices. Plaintiffs' complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face" for municipal liability. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, dismissal of these claims is warranted.

### C. Whether Plaintiffs Have Sufficiently Alleged § 1983 Claims for Failure to Train for the Doe Children

Plaintiffs further allege that Prosper ISD is liable under § 1983 because it failed to adequately train its employees. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizen's rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Supreme Court emphasized in *Connick* that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* In assessing whether a training policy and procedure is inadequate, courts look to "whether the program 'enable[s] officers to respond properly to the usual and recurring situations with which they must deal.'" *Hicks–Fields*, 860 F.3d at 811 (quoting *Benavides v. Wilson Cnty.*, 955 F.2d 968, 973 (5th Cir. 1992)(citing *City of Canton*, 489 U.S. at 391)).

An inadequate training program or a failure to train, once shown to be an official policy or custom of which a municipality has knowledge, may serve as the basis for § 1983 liability only where inadequate training amounts to deliberate indifference. *See City of Canton*, 489 U.S. at 388. It follows that to hold a municipality liable under § 1983 based on a policy of inadequate training, a plaintiff must demonstrate that "(1) [the municipality's] training policy was inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation]". *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)), *abrogated in part on other grounds*, *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015); *accord Benavides*, 955 F.2d at 972 (citing *City of Canton*, 489 U.S. at 389–392).

26

The requisite deliberate indifference in the inadequate training context may be shown by a plaintiff in one of two ways. *Kitchen*, 759 F.3d at 484. The first and "more typical approach" is to demonstrate that a municipality had "'[n]otice of a pattern of similar violations,' which were 'fairly similar to what ultimately transpired' when the plaintiffs own rights were violated." *Id.* (quoting *Sanders–Burns*, 594 F.3d at 381). "Establishing deliberate indifference [under this first approach] generally requires a showing that the municipality failed to change its training methods in the face of several incidents in which training methods caused constitutional violations." *Cardenas v. Lee Cnty.*, 569 F. App'x 252, 257–58 (5th Cir. 2014)(citations omitted).

The second approach allows for a finding of deliberate indifference based on a single incident in a narrow range of circumstances where a constitutional violation is likely to result as the highly predictable consequence of a particular failure to train. *See Kitchen*, 759 F.3d at 484. This "single-incident exception" is a narrow one, and "to rely on the exception 'a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.'" *Sanders–Burns*, 594 F.3d at 381 (5th Cir. 2010)(quoting *Davis*, 406 F.3d at 383 n.34); *see also Cardenas*, 569 F. App'x at 257–58 (noting that Supreme Court in *City of Canton* gave as example a police department arming officers but failing to train them as to deadly force) (citing *City of Canton*, 489 U.S. at 390 n.10).

A successful failure to train claim also requires the plaintiff to "allege with specificity how a particular training program is defective." *Zarnow*, 614 F.3d at 170 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)); *see also Goodman* , 571 F.3d at 395. This is because the need for more or different training must be "so obvious, and the inadequacy so likely to result

in the violation of constitutional rights, that the policymakers of the [city] can reasonably be said to have been deliberately indifferent to the need," and "the failure to provide proper training may fairly be said to represent a policy for which the [city] is responsible." *See Longoria v. Dall. Cnty., et al.*, No. 3:14-CV-3111, 2017 WL 958605, at *13 (N.D. Tex. 2017) (quoting *City of Canton*, 489 U.S. at 390), *vacated in part on recons.*, 2018 WL 339311 (N.D. Tex. 2018)(Lindsey, J.). Plaintiffs, however, do not point to any specific training program that was ineffective. Instead, Plaintiffs merely allege that Prosper ISD failed to train its teachers and staff on (1) their interactions with students, (2) signs of sexually inappropriate behavior, and (3) investigations and reporting information concerning sexually inappropriate behavior. "But without knowing what training [Defendant] provided, it is impossible to know whether the failure in this case lies in the training or the officials' execution." *Dall. Indep. Sch. Dist.*, 194 F. Supp. 3d at 563. Therefore, Plaintiffs failed to allege § 1983 failure to train claim for which the Court can grant relief irrespective of which approach Plaintiffs allege.

"[W]here the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Here, Plaintiffs' failure-to-train allegations do not allow the Court to infer more than the mere possibility of unconstitutional customs or practices. Plaintiffs' complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *See id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, dismissal of Plaintiff's failure-to-train claims is warranted.

### D. Whether Plaintiffs Have Sufficiently Alleged § 1983 Claims for Failure to Supervise on Behalf of the Doe Children

Plaintiffs' failure-to-supervise claim fails for similar reasons. To prevail on a failure-to-supervise claim, the plaintiff must show that (1) the supervision policies of the municipality were inadequate, (2) the municipality was deliberately indifferent in adopting such policies, and (3) the inadequate supervision policies directly caused the plaintiff's injuries. *See Callaway v. Travis Cnty.*, No. A-15-CA-00103, 2016 WL 4371943 at *11 n. 10 (W.D. Tex. July 28, 2016) (citing *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *City of Canton*, 489 U.S. at 389–92).

Proof that a single constitutional violation resulted from inadequate supervision is ordinarily insufficient to hold a municipality liable for inadequate supervision. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)(citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998)). The plaintiff must usually demonstrate a pattern of similar violations to establish the deliberate indifference required to impose municipal liability for failure to supervise. *Id.* (citation omitted). Only when a failure to train or supervise reflects a "deliberate" or "conscious" choice can a municipality be liable for such a failure under § 1983. *See City of Canton*, 489 U.S. at 388–89. The need for more or different supervision must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [city] can reasonably be said to have been deliberately indifferent to the need," and "the failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [city] is responsible." *See Longoria*, 2017 WL 958605, at *13 (quoting *City of Canton*, 489 U.S. at 390). For Prosper ISD to be liable for failure to supervise, "it at least must have been obvious that 'the highly predictable consequence' of not supervising its officers was that they 'would apply force in such a way that the

Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 850 (quoting *Bryan Cnty.*, 219 F.3d at 461).

Plaintiffs allege that Prosper ISD failed to adequately supervise (1) its teachers and staff on their interactions with students, (2) signs of sexually inappropriate behavior, (3) bus surveillance on a reasonable basis, and (4) Paniagua. Here, however, Plaintiffs do not point to any specific supervision policy that was inadequate. Thus, Plaintiffs do not allege a failure-to-supervise claim upon which relief can be granted.

"[W]here the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Here, Plaintiffs' failure-to-supervise allegations do not allow the Court to infer more than the mere possibility of unconstitutional customs or practices. Plaintiffs' complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *See id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, dismissal of these claims is also warranted.

### E.  Whether the Doe Children Can Recover Exemplary Damages Under § 1983

Plaintiffs also allege that they are entitled to exemplary (or punitive) damages under § 1983. However, as the Fifth Circuit recognized in *Skyy v. City of Arlington*, punitive damages are not available against a governmental entity under § 1983:

> Concluding that punitive damages for actions of its officials were not accorded against a municipality at common law in 1871 when Congress enacted the first iteration of Section 1983, the Supreme Court, in *City of Newport*, held that a municipality was immune from the imposition of punitive damages unless Congress specifically provides to the contrary.  When this circuit has had occasion to address the issue of punitive damages against a municipality we have faithfully applied *City of Newport*, rejecting attempts to impose punitive damages for constitutional and other violations where Congress has not expressed a clear intention to do so.  Because Congress has not expressed a clear intention to permit punitive damages against

municipalities in Section 1983 actions stemming from alleged Fourth and Eighth Amendment violations, Appellants' are barred from seeking punitive damages.

712 F. App'x 396, 401 (5th Cir. 2017). Plaintiffs do not dispute that punitive or exemplary damages are not available under § 1983. Accordingly, insofar as Plaintiffs request exemplary damages under § 1983, Plaintiffs are not entitled to those damages.

## IV.    Plaintiffs' Request for Declaratory Relief

Prosper ISD further argues that the Court lacks jurisdiction over Plaintiffs' request for declaratory relief. Prosper ISD argues that because Paniagua was terminated and is now dead, he is unable to cause the Doe Children any future injury. In response, Plaintiffs contend that Prosper ISD's "monitoring (or lack thereof) of bus GPS, bus surveillance, and negligent supervision of district bus drivers" puts the Doe Children at risk for future harm.

"The federal Declaratory Judgment Act does not create an independent cause of action that would confer jurisdiction on the district court." *Collins v. NFL*, 566 F. Supp. 3d 586, 603 (E.D. Tex. 2021) (Mazzant, J.) (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983)). Rather, "[i]t is the underlying cause of action that is actually litigated in a declaratory judgment action." *Id.* (citing *Bayse v. Wells Fargo Bank., N.A.*, No. 3-12-CV-4098-K, 2013 WL 2110043, at *4 (N.D. Tex. May 16, 2013)). "If a plaintiff's underlying, substantive claims fail to state a cause of action upon which relief can be granted, the plaintiff cannot prevail on a claim for declaratory judgment." *Id.*

As discussed above, Plaintiffs' underlying, substantive § 1983 claims fail to state a cause of action upon which relief can be granted. Plaintiffs' desired declaration is entirely derivative of those claims. Therefore, Plaintiffs cannot prevail on a claim for declaratory judgment. The Court does not foreclose the possibility that, upon amending their complaint, Plaintiffs could plead

plausible claims as well as plausible declaratory relief. However, at this juncture, Plaintiffs have failed to state a § 1983 claim upon which declaratory relief can be granted.

***

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . ."). But permitting multiple attempts at re-pleading is not an absolute requirement. There are limitations on repeated attempts at amendments, particularly where a court concludes that a plaintiff has already had an opportunity to state her best case and her pleadings still fall short. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Court also has discretion to deny leave to amend if amendment would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) (citation omitted). Futility in the context of an amended complaint means that the amended complaint would fail to state a claim upon which relief could be granted. *Id.* at 873.

Here, amendment to John and Jane Doe's individual claims would be futile because they suffered no individual injuries. Likewise, an amendment to Plaintiffs' tort claims would be futile because those claims are barred by immunity. The Supreme Court disallowed claims for emotional distress damages under Title IX; thus, it would be futile to allow those claims to be amended. Plaintiffs' heightened risk claim is not recognized in this circuit, so it would be futile to allow that claim to be amended. Finally, because Plaintiffs cannot recover exemplary damages under § 1983, it would be futile to allow them to amend their complaint with respect to exemplary damages. Plaintiffs need no opportunity to replead these claims or requests for damages because, regardless

32

of the allegations in Plaintiffs' newly amended complaint, Plaintiffs would fail to state a claim upon which relief could be granted. *Id.* Plaintiffs may, however, replead the Doe Children's § 1983 claims and request for declaratory judgment to allege additional facts in support of their claims. Indeed, the Court believes that justice is best served by providing Plaintiffs one last opportunity to plead the Doe Children's § 1983 claims and request for declaratory judgment.

## CONCLUSION

It is therefore **ORDERED** that Defendant Prosper Independent School District's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #54) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that John and Jane Doe's claims asserted in their individual capacities against Defendant Prosper ISD, Plaintiffs' tort claims against Defendant Prosper ISD, Plaintiffs' Title IX heightened risk claim against Prosper ISD, Plaintiffs' request for exemplary damages against Prosper ISD under § 1983, and Plaintiffs' request for emotional distressed damages under Title IX are **DISMISSED with PREJUDICE**.

It is further **ORDERED** that the Doe Children's § 1983 claims and request for declaratory judgment are **DISMISSED without PREJUDICE**.  Plaintiffs may file an amended complaint with respect to these claims.  Plaintiffs must file their amended complaint within fourteen (14) days of this Order.

**IT IS SO ORDERED**.

**SIGNED this 27th day of March, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE