# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JANE and JOHN DOE, as next friends
of JANIE DOE 1 and JANIE DOE 2,
MINOR CHILDREN,

     *Plaintiffs,*

v.

PROSPER INDEPENDENT SCHOOL
DISTRICT and ANNETTE
PANIAGUA EX REL. THE ESTATE
OF FRANK PANIAGUA,

     *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4:22-cv-814
Judge Mazzant

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Prosper Independent School District's Motion for Summary Judgment (Dkt. #119). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED**.

## BACKGROUND

During the 2021–2022 school year, eight-year-old Janie Doe 1 and six-year-old Janie Doe 2 (the "Doe Children") attended elementary school in the Prosper Independent School District ("Prosper ISD"). The Doe Children rode a bus driven by Frank Paniagua ("Paniagua") to school three to four times a week. The complaint alleges that, every morning after picking up the Doe Children but before picking up other children, Paniagua would drive the bus off route and make an unscheduled stop. During this stop, Paniagua would molest the Doe Children under the guise of adjusting their seatbelts. Later, after picking up other students, Paniagua would drop the students off at school. After the other students had left the bus, Paniagua would continue to molest the Doe

Children on the bus for several minutes, alone. This abuse occurred every morning that the girls took the bus to school. The abuse was captured on Prosper ISD's on-board surveillance footage.

On Saturday, May 7, 2022, the Doe Children told their mother, Jane Doe, that Paniagua "sometimes . . . touches them." Jane Doe called Prosper ISD's Transportation Department and the Prosper ISD Police Department, left voicemails, and followed up with emails. Then, on the morning of May 9, 2022, Prosper ISD police pulled the surveillance video from Paniagua's bus and reviewed it before sending it to the Prosper ISD Police Department. The following day, the Doe Children underwent forensic interviews. On May 11, 2022, Paniagua was arrested and booked on charges of Aggravated Sexual Assault of a Child, Continuous Sexual Abuse of a Child Victim Under 14, and Indecency with a Child Sexual Contact. Following his arrest and booking into the Collin County Jail, Paniagua attempted suicide by jumping off the second floor of the jail, paralyzing himself. He was released into the care of his family and died on June 10, 2022.

Jane and John Doe ("Plaintiffs") filed suit on behalf of themselves and the Doe Children, seeking to hold Defendants Prosper ISD, Holly Ferguson (the Superintendent of Prosper ISD), Annamarie Hamrick (the former Director of Prosper ISD Transportation Department), and the Estate of Frank Paniagua responsible for Paniagua's actions.

Since the removal of this lawsuit to federal court, Plaintiffs have filed several amended complaints (Dkt. #14; Dkt. #27; Dkt. #72; Dkt. #95). Prosper ISD and the Estate of Frank Paniagua are the only remaining defendants in the operative complaint (Dkt. #95). The remaining claims are: (1) a 42 U.S.C. § 1983 claim against Paniagua's estate; (2) a 20 U.S.C. § 1681 ("Title IX") claim against Prosper ISD; and (3) a 42 U.S.C. § 1983 claim against Prosper ISD.

On March 27, 2024, the Court granted in part and denied in part Prosper ISD's motion to dismiss several of Plaintiffs' claims without prejudice (Dkt. #69). In relevant part, the Court:

- Declined to dismiss Plaintiffs' Title IX claims because Plaintiffs sufficiently alleged that Prosper ISD had actual knowledge of Paniagua's abuse (Dkt. #69 at pp. 14, 23);

- Dismissed Plaintiffs' § 1983 claims without prejudice to the extent they rested on Prosper ISD's Board of Trustees delegating its policymaking authority, because Plaintiffs insufficiently alleged that any delegation occurred (Dkt. #69 at pp. 20, 33);

- Dismissed Plaintiffs' § 1983 claims based on a custom of constitutional violations without prejudice because Plaintiffs did not allege any pattern separate from the incident at issue (Dkt. #69 at pp. 23, 33);

- Dismissed Plaintiffs' § 1983 claims based on a single-unconstitutional-incident theory without prejudice because Plaintiffs did not allege any specific conduct by Prosper ISD's Board of Trustees or its members and failed to allege a delegation of policymaking authority (Dkt. #69 at pp. 24, 33).

- Dismissed Plaintiffs' § 1983 claims based on a failure-to-train theory without prejudice because Plaintiffs did not allege any specific training program was inadequate (Dkt. #69 at pp. 28, 33); and

- Dismissed Plaintiffs' § 1983 claims based on a failure-to-supervise theory because Plaintiffs did not allege any specific supervision policy was inadequate (Dkt. #69 at pp. 30, 33).

Plaintiffs reasserted each theory in their operative complaint (Dkt. #95). Defendant then moved to dismiss the claims, but the Court denied the motion to dismiss as moot once Defendant filed its motion for summary judgment premised on essentially the same grounds (Dkt. #120). The motion for summary judgment is fully briefed (Dkt. #119; Dkt. #123; Dkt. #124; Dkt. #126). Prosper ISD filed objections to Plaintiffs' summary judgment evidence, and Plaintiffs responded (Dkt. #127; Dkt. #128). The Court also permitted Prosper ISD to file a supplemental brief supporting the objections, to which a response and reply were filed (Dkt. #130; Dkt. #131; Dkt. #141; Dkt. #150). The motion for summary judgment is now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating

there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hous. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

A pedophile sexually abused the Doe Children on the very school bus that was supposed to get them to school safely. That is undisputed. It is also undisputed that Paniagua's abuse violated the Doe Children's constitutional right to bodily integrity. The central question is whether Paniagua's conduct can be considered the conduct of the school district itself. Under controlling precedent, it cannot. Summary judgment is therefore required.

The Court will first address Plaintiffs' municipal liability claims against Prosper ISD. *See infra* I. Then, it turns to the Title IX claims. *See infra* II. Ultimately, no genuine issue of material fact exists regarding essential elements of Plaintiffs' claims, so the Court will grant the motion.

## I.      Municipal Liability

Plaintiffs allege that Prosper ISD is liable under § 1983 because it "acted with deliberate indifference in maintaining an unconstitutional customary policy of failing to supervise its drivers," and "failed to train its teachers and other personnel attending bus drop-offs and the personnel who

reviewed drivers' videos annually to recognize signs of sexual abuse" (Dkt. #124 at pp. 19, 20–21). Plaintiffs also argue that the Doe Children have an actionable equal protection claim because they were treated differently from other similarly situated students (Dkt. #124 at p. 21).

To state a claim under § 1983, a plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). As governmental units, independent school districts are subject to liability under § 1983 only if *Monell*'s requirements are satisfied. *Id.* (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). Therefore, to avoid summary judgment, a plaintiff suing a school district must raise a fact issue regarding "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of the constitutional right." *Cambric v. City of Corpus Christi*, No. 25-40126, 2026 WL 709200, at *2 (5th Cir. Mar. 13, 2026) (first citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); and then citing *Monell*, 436 U.S. at 691). "The three attribution principles identified here—a policymaker, an official policy and the 'moving force' of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has "identified three routes to establishing an 'official policy' for the purposes of municipal liability." *Cambric*, 2026 WL 709200, at *3. First, "a policy statement formally announced by an official policymaker." *Id.* (citation modified). Second, a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly

6

represents municipal policy." *Id.* (citation modified). And third, "a single unconstitutional act by a final policymaker." *Id.*

In Plaintiffs response, they argue that this is not a case about an "express policy promulgated by [Prosper ISD's] Board [of Trustees] itself" (Dkt. #124 at p. 18). So the first path to municipal liability is not at issue. It is not clear, however, whether Plaintiffs pursue both a custom theory and a single-unconstitutional-act theory. For the sake of completeness, the Court assumes they pursue both.

From what the Court can discern, Plaintiffs point to two potential policymakers for their *Monell* claims: Superintendent Holly Ferguson ("Ferguson") and Prosper ISD's Board of Trustees (the "Board").

Below, the Court will provide the applicable standard for identifying a municipal policymaker. *See infra* I.A. Then, the Court will explain why the Board, not Ferguson, is the relevant municipal policymaker under Texas law. *See infra* I.B. After that, the Court will explain why no genuine issue of material fact exists regarding a custom of constitutional violations that fairly represent municipal policy. *See infra* I.C. Then, the Court will explain why Plaintiffs' failure-to-train and failure-to-supervise claim cannot succeed under the single-unconstitutional-act theory of municipal liability. *See infra* I.D. And in the end of this section, the Court will explain why summary judgment regarding Plaintiffs' equal protection claims is appropriate. *See infra* I.E.

## A.    Standard Governing Policymaker Status

A municipal "policymaker is one who takes the place of the governing body in a designated area of city administration." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (citation modified). "He or she must decide the goals for a particular city function and devise the means of achieving those goals." *Id.* (citation modified). Furthermore, the "policymaker must have

final policymaking authority." *Rivera v. Hou. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 1993). "By limiting the single decisions that trigger municipal liability to those made by final policymakers, we avoid imposing *respondeat superior* liability, which the Supreme Court has rejected in the § 1983 context." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020).

"Whether a particular official has final policymaking authority is a question of state law." *Id.* (citation modified). The parties agree that "Texas law unequivocally delegates to the Board [of Trustees] 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Rivera*, 349 F.3d at 247 (quoting TEX. EDUC. CODE § 11.151(b)).

It is important to note that "[t]here is a fundamental difference between decision makers and policymakers." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246–47 (5th Cir. 2021) (per curiam) (unpublished). "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548–49 (5th Cir. 2008) (per curiam). A municipality is liable only for acts directly attributable to it "through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. Put another way, "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004) (unpublished).

Policymaking authority can be delegated. *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993). A "governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Zarnow*, 614 F.3d at 167 (citation modified).

With these principles in mind, the Court turns to whether Plaintiffs "identify a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy that caused [the Doe Children's] injuries." *Piotrowski*, 237 F.3d at 578–79.

### B.      Prosper ISD's Policymaker

A superintendent is not a policymaker for a school district under Texas law. *Jett*, 7 F.3d at 1245. Plaintiffs argue that Ferguson is Prosper ISD's policymaker, however, because the Board delegated policymaking authority to her. In their view, the Board "hand[ed] off responsibility for policymaking with respect to school bus surveillance and the supervision of drivers to [Ferguson] and her 'team'" (Dkt. #124 at p. 18). In support of that proposition, Plaintiffs cite two pages from Ferguson's deposition. The relevant portions of those pages appear to be the following:

> Q. And you have the ability to change things like watching cameras, having people on the bus, giv[ing] parents access to live feed, you as superintendent have the ability to do those things or at least make those recommendations to the school board, right?
>
> MR. BRANDT: Objection. Form.
>
> THE WITNESS: School board wouldn't have any say over something like that. They have three main purposes that they do, hire and fire the superintendent, policy and the finances.
>
> Q. BY MR. MCCATHERN: So do you have authority to do it?
>
> MR. BRANDT: Objection. Form.
>
> THE WITNESS: Could work with my team and figure out just like, huh, obviously team got together and started working through these details.
>
> Q. BY MR. MCCATHERN: So you could -- you could make those changes if you want to that I'm talking about?
>
> MR. BRANDT: Objection. Form.
>
> THE WITNESS: We would collaborate.

Q. BY MR. MCCATHERN: But you haven't made any of the changes?

MR. BRANDT: Objection. Form.

THE WITNESS: No. I've already explained the changes that we've made.

(Dkt. #124-3 at pp. 6–7).

In response, Prosper ISD argues that Plaintiffs' position confuses Ferguson's discretion over day-to-day operations as final policymaking authority. The Court agrees.

The facts presented are similar to those in *Doe ex rel. Doe v. Dallas Independent School District*, 153 F.3d 211, 216–17 (5th Cir. 1998). In *Doe*, the plaintiffs alleged that DISD's Board of Trustees had "no formal policy for addressing allegations of sexual abuse," and delegated that authority to school principals. *Id.* at 216. In support, plaintiffs presented the testimony of a former executive director for DISD. *Id.* He testified that "DISD had no standard procedure for handling allegations of sexual abuse and that often a school's principal made the initial decision as to what actions to take in response to such an allegation." *Id.* at 216–17. Relying on that testimony, plaintiffs argued that DISD's Board delegated policymaking authority to the school principal. *Id.* at 217.

The Fifth Circuit disagreed. It reasoned that the director's testimony established "only that principals were given the discretion to handle allegations of sexual abuse, not that they were delegated the broader authority to formulate official policy on the subject." *Id.*

Here, to establish a delegation of policymaking authority, Plaintiffs rely on Ferguson's testimony that "the Board of Trustees has no actual role in setting policy with respect to the on-bus surveillance or the frequency with which it is reviewed, and that she and her 'team' would have the authority to set such policy" (Dkt. #124 at p. 11). This argument resembles the argument in *Doe* that "DISD had no formal policy for addressing allegations of sexual abuse" and delegated "the

10

authority to make policy in that area [to principals]." *Doe*, 153 F.3d at 216. But like the director's testimony in *Doe*, Ferguson's testimony "establishes only that [superintendents] were given the discretion to handle [surveillance and supervision policies], not that they were delegated the broader authority to formulate official policy on the subject." *Id.* at 217.

Under Fifth Circuit precedent, even evidence that the Board was aware of Ferguson's decisions and went along with them would be insufficient to show delegation. *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 530 n.6 (5th Cir. 2006) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy."). The argument that Ferguson was a policymaker through delegation therefore fails under the controlling precedent.

Thus, for purposes of evaluating Plaintiffs' customary policy and single-unconstitutional-act theories, the relevant policymaker is the Board, and summary judgment must be granted on all *Monell* claims that depend on Ferguson's policymaker status. Having found the relevant policymaker, Court's remaining analysis focuses on whether Plaintiffs introduce evidence of the Board's liability under *Monell*.

11

### C.    Customary Policy

Plaintiffs' summary judgment evidence and arguments do not identify any other incidents of constitutional violations inflicted by untrained or unsupervised municipal personnel.[1] Therefore, no genuine issue of material fact exists regarding a custom of constitutional violations, and summary judgment is granted as to that theory. *See Edwards v. City of Balch Springs*, 70 F.4th 302, 312–13 (5th Cir. 2023) (explaining that a plaintiff asserting a failure to train or supervise must ordinarily introduce evidence of a pattern of similar violations unless an exception applies).

Thus, the only remaining path to municipal liability under § 1983 is a single-unconstitutional-act theory—an "extremely narrow" exception to the pattern requirement. *Id.* The Court addresses its application below. *See infra* I.D.

### D.    The Single-Unconstitutional-Act Theory

To the extent Plaintiffs allege a failure to train or supervise was a single unconstitutional act, this *Monell* theory fails because Plaintiffs cannot satisfy the stringent standard of deliberate indifference in cases where no pattern of constitutional violations is alleged. In *Edwards*, the Fifth Circuit was faced with the question of whether a district court correctly granted summary judgment

---

[1] Even construing Plaintiffs' response as alleging that a pattern existed because the Doe Children were repeatedly abused, the argument is foreclosed by Fifth Circuit precedent. *See, e.g.*, *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (holding that no pattern existed because the plaintiffs offered "no evidence that similar retaliation had victimized others."); *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 & n.14 (5th Cir. 2018). In their response to Prosper ISD's statement of undisputed material facts, Plaintiffs include an allegation that Prosper ISD's corporate representative could not explain a notation on Paniagua's annual evaluation report stating "Date chosen for video review was good. Six conduct reports as of 3/1/2022" (Dkt. #124 at p. 7). Plaintiffs do not argue this notation shows a pattern of constitutional violations, and the Court has no basis to believe that it does. On December 23, 2025, Plaintiffs filed a reply in support of a motion to compel, where they conceded that Prosper ISD produced incident reports regarding misconduct by Prosper ISD employees (Dkt. #118 at p. 3). The motion for summary judgment was filed on January 2, 2026, and Plaintiffs responded on January 23, 2026 (Dkt. #119; Dkt. #124). Nowhere in the response do Plaintiffs allege that Paniagua was the subject of any incident reports that have not been produced. Nor do Plaintiffs argue that any further discovery is necessary to oppose the motion for summary judgment. Even if the Court assumed the "conduct reports" refer to constitutional violations, there is no evidence that the reports "point to [a pattern of] the specific [constitutional] violation in question." *Edwards*, 70 F.4th at 313 (citation modified).

for a municipality on failure-to-train and supervise theories. *Edwards*, 70 F.4th at 312–14. It provided the elements of each theory without noting any distinction between the theories. *Id.* at 312 ("To succeed [on a failure to train or supervise theory], the plaintiff must demonstrate that: (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." (citation modified)). The Fifth Circuit then expanded on what it takes to demonstrate a municipality's deliberate indifference:

> "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." "A pattern requires *similarity and specificity*; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." Because deliberate indifference typically requires a pattern, "we have stressed that a single incident is usually insufficient to demonstrate deliberate indifference." The "'single incident exception' is extremely narrow," and *as an exception to the pattern requirement, it* "*is generally reserved for those cases in which the government actor was provided no training whatsoever.*"

*Id.* at 312–13 (second emphasis added) (footnotes omitted).

The Fifth Circuit has characterized this exception in a similar manner before, explaining that it applies only in a "narrow range of circumstances where a constitutional violation would result as the highly predictable consequence of a particular failure to train." *Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014) (citation modified), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015). The relevant risk must be "so predictable that failing to train the municipal personnel amounted to *conscious disregard* for the injured party's rights." *Id.* at 485 (citation modified). To support an inference of conscious disregard, the "municipal entity must have failed to train its employees concerning a clear constitutional duty implicated in

13

recurrent situations that a particular employee is certain to face." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018) (citation modified). "Thus, for example, if a city policymaker opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the city acted with the requisite deliberate indifference." *Id.* at 625.

The Supreme Court and the Fifth Circuit have both emphasized that deliberate indifference can be shown only when the municipal personnel's duties implicate areas where formal training is obviously required. For example, in *Connick v. Thompson*, 563 U.S. 51, 64 (2011), the Supreme Court distinguished prosecutors from police officers when rejecting a failure-to-train theory premised on the failure to train prosecutors to follow *Brady* obligations:

> Failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability. The obvious need for specific legal training that was present in the *Canton* scenario is absent here. Armed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. *And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require.* Under those circumstances there is an obvious need for some form of training. In stark contrast, legal "[t]raining is what differentiates attorneys from average public employees."

*Connick*, 563 U.S. at 64 (third emphasis added) (alteration in original) (citations omitted).

And in *Kitchen*, the Fifth Circuit rejected a *Monell* theory premised on a municipality's failure to train detention officers to extract mentally ill inmates from jail cells:

> [T]he record in this case contains no proof, whether in the form of expert evidence or otherwise, that the extraction of mentally ill inmates from jail cells requires specialized training. There is no suggestion, for example, that any other municipality in the United States provides such specialized training to detention officers. Plaintiff–Appellant's evidence therefore does not demonstrate the same level of "patently obvious" risks of "recurring constitutional violations" that may occur, as hypothesized by the Supreme Court in *Canton* and *Connick*, in instances

14

where a municipality sends "armed officers . . . to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."

*Kitchen*, 759 F.3d at 485 (citations and footnotes omitted).

Fifth Circuit precedent treats failure-to-supervise theories with similar scrutiny. *See*, *e.g.,* *Peterson*, 588 F.3d at 850 ("[F]or the City to be liable for failure to supervise, it at least must have been obvious that the highly predictable consequence of not supervising its officers was that they would apply force in such a way that the Fourth Amendment rights of citizens were at risk." (citation modified)). The failure-to-supervise theory in *Edwards* was based on a municipality's failure to track excessive force incidents, which allegedly created an atmosphere that condoned and ratified constitutional violations. *Edwards*, 70 F.4th at 313. The Fifth Circuit held that such a theory does not fall under the narrow exception to the pattern requirement to show deliberate indifference. *Id*. The plaintiff argued that he could not raise a fact issue regarding a pattern of violations if the municipality did not track them. *Id*. The Fifth Circuit rejected the argument, reasoning that it "confuses *tracking* and *supervision*." *Id*. "A municipality is capable of supervising its employees even if it does not maintain a perpetual record of their every infraction." *Id*.

Thus, the plaintiff was required to show either that the lack of record-keeping violated the law or that the failure to conduct record-keeping led to a pattern of constitutional violations. *Id*. He did not, so the Fifth Circuit held that no fact issue existed regarding a deliberately indifferent failure to supervise. *Id*. at 313–14.

The Supreme Court has explained that the deliberate indifference element must be subject to stringent standards because:

> To adopt lesser standards . . . would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to

point to something the city "could have done" to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities—a result we rejected in *Monell* . . . . It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.

*City of Canton v. Harris*, 489 U.S. 378, 391–92 (1989).

The Court will now apply these principles to the facts at hand.

### 1.    There is no evidence of the deliberate indifference required for Plaintiffs' failure-to-train claim.

Viewing the evidence in the light most favorable to Plaintiffs, the evidence shows that Prosper ISD did not provide teachers training other than using common sense to identify red flags for sexual abuse during drop-offs. Moreover, the evidence shows that personnel reviewing surveillance footage for annual reviews received no training other than to view a small portion of footage to ensure that bus drivers greeted students and said goodbye. The question is whether a fact issue exists regarding the obvious need to provide these teachers and the video team training to recognize red flags indicating sexual abuse.[2] The applicable law indicates that the answer is no.

Plaintiffs present no evidence that teachers attending drop-offs and the video team reviewing footage are analogous to novice police officers untrained in Fourth Amendment law that will "certain[ly] . . . face" recurring situations concerning clear constitutional duties. *Littell*, 894 F.3d at 624–25. The record contains "no proof, whether in the form of expert evidence or

---

[2]    The Court need not reach the issue of whether Plaintiffs allege a "no training" theory, because even assuming that Prosper ISD's training amounted to no training at all, summary judgment would be warranted for the reasons herein. Whether a municipality provided some or no training is significant in *Monell* cases because the single incident exception is "generally reserved for those cases in which the government actor was provided no training whatsoever," and a pattern of violations is ordinarily required. *Edwards*, 70 F.4th at 312–13 (citation modified).

otherwise," that observing red flags during drop-off or the review of surveillance footage "requires specialized training." *Kitchen*, 759 F.3d at 485. Moreover, there is no evidence that "in the absence of training . . . there is no way" for school personnel to obtain the "knowledge [that spotting red flags] require[s]." *Connick*, 563 U.S. at 64. Thus, there is no genuine issue of material fact regarding the Board's deliberately indifferent failure to train.

The Western District of Texas reached a similar conclusion when faced with an analogous *Monell* theory in *Ayon v. Austin Independent School District*, No. 1:19-CV-586-RP, 2020 WL 1536383 (W.D. Tex. Mar. 31, 2020). The case arose "from the physical, emotional, and psychological harms [a minor] sustained" after a school bus driver "repeatedly sexually assaulted her on the bus ride to school" for more than three months. *Id.* at *1. One of the plaintiff's theories was that Austin ISD failed to adequately train its bus monitors present during drop-offs. *Id.* at *6. The court provided the following reasoning when it held that the plaintiff's theory would not be viable even if the school district provided no training to bus monitors at all:

> This case differs in important ways from *Littell*, in which the Fifth Circuit recognized that the plaintiffs had successfully alleged deliberate indifference without a pattern of constitutional violations based on a complete failure to train. In *Littell*, the plaintiffs alleged the school district provided no training to its employees on Fourth Amendment law and pleaded sufficient facts to show that there was an obvious need for *some* training on the constitutional bounds of student searches because there was no reason to assume school district employees come "pre-equipped with legal knowledge" on the constitutional constraints placed on student searches. And because employees were routinely placed in situations involving student searches, there was an obvious need for some training. Accordingly, the school district's decision to provide no training warranted the inference that it acted with deliberate indifference to that need. Here, the school district can arguably rely on employees coming pre-equipped with at least some understanding of what constitutes sexual abuse of a minor. Moreover, unlike in *Littell*, where plaintiffs showed that the school district "knew or should have known" that school employees "would be placed in situations requiring knowledge of Fourth Amendment search law," the idea that AISD knew or should have known that bus monitors would be placed in situations requiring knowledge of substantive

17

due process law is far less persuasive. Thus, even if Plaintiff had alleged AISD provided no training to either Lopez or Maldonado, this case would still not resemble those rare instances when the Fifth Circuit has found deliberate indifference absent a pattern of constitutional violations.

*Id.* at *7 n.4.

Likewise, here, the Court does not find that the necessity of training to observe red flags was so obvious that the Board could be found to have acted with deliberate indifference. The Court does not minimize the importance of observing—and acting upon—red flags. Here, if teachers had taken action after the Doe Children remained on the bus after other students, a tragedy could have been averted. The same goes for any red flags the video team failed to take action upon. But the law does not allow the failures of teachers and other personnel to be attributed to a school district unless stringent standards of fault are satisfied. Plaintiffs introduce no evidence that *training* was so obviously needed to prompt personnel to take action that this case falls under the "extremely narrow" class of cases where showing a pattern of constitutional violations is not required. *Edwards*, 70 F.4th at 312–13 (citation modified); *see also, e.g.*, *McKinney v. Sharp*, No. 25-00080-SDD-RLB, 2026 WL 868598, at *12 (M.D. La. Mar. 30, 2026) (explaining that, "with only one exception in some (40) years since *Monell*," the Fifth Circuit has "consistently rejected application of the single incident exception"). Thus, there is no evidence regarding the Board's *deliberately* indifferent failure to train under the applicable law. *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can a city be liable for such a failure under § 1983." (citation modified)). Summary judgment must therefore be granted on the failure-to-train claim.

18

**2.    There is no evidence of the deliberate indifference required for Plaintiffs' failure-to-supervise claim.**

Plaintiffs failure-to-supervise claim focuses on the Board's alleged failure to supervise bus drivers like Paniagua. The key to this theory is the surveillance footage which, as both sides agree, plainly depicted Paniagua's sexual abuse. For the sake of completeness, the Court will quote Plaintiffs' arguments regarding this theory, which read as follows:

> [T]he evidence that Plaintiffs have presented raises a triable dispute of fact as to whether that policy [of failure to supervise bus drivers] was promulgated and maintained with deliberate indifference to the risk it posed to the constitutional rights of students like Plaintiffs. The *potential* usefulness of on-board bus surveillance in detecting child sex abuse is obvious. Indeed, Prosper ISD itself astoundingly pointed to its "bus video monitoring system" as one of the ways it keeps student riders safe in its public statement following the "independent" investigation by trial counsel into the events of this case. But that surveillance protects students only if it is *reviewed*, at least from time to time, and Plaintiff's summary judgment evidence shows that Prosper ISD deliberately maintained a policy of *not* supervising its drivers by periodically checking their on-bus surveillance. Even the annual driver evaluations involved, at most, review of a portion of a single route to see if the driver was "greeting the children" and "saying goodbye." Curiously, Prosper ISD maintained this policy of near complete non-supervision even though the Transportation Department employed a "video team" of three specifically to review and pull bus surveillance when requested. Yet even after the facts of this case came to light, and while Prosper's administrators were recommending "officers video audit routes monthly," Prosper ISD did nothing to change its policy of non-supervision. A reasonable jury could find that Prosper ISD acted with deliberate indifference in maintaining an unconstitutional customary policy of failing to supervise its drivers based on these facts.
>
> * * *
>
> [Furthermore], Plaintiffs have presented evidence of a customary policy of failing to supervise drivers by failing to review the on-bus surveillance. Prosper ISD's witnesses were consistent and clear about one point: at the time of the events in this case, Prosper ISD reviewed on-bus surveillance only: (1) in cases of a specific incident or complaint; or (2) by reviewing part of a single day's route as part of a driver's annual evaluation. That evidence is more than sufficient to establish that non-review of the bus surveillance was "so common and well-settled as to constitute a custom that fairly represents municipal policy.'"

(Dkt. #124 at pp. 18–20 (citations omitted)).

As Plaintiffs concede, Prosper ISD's conduct cannot be characterized as complete non-supervision. It is undisputed that, within days of the Doe Children's outcry, Paniagua was fired and behind bars. *Cf. Ayon*, 2020 WL 1536383, at *8 ("As an initial matter, AISD did demonstrate some level of employee supervision by investigating Maldonado's conduct as soon as it learned of the allegations against him and ultimately terminating him."); *Peterson*, 588 F.3d at 850 (considering the fact that municipality "did demonstrate some supervision" when affirming district court's grant of summary judgment on failure to supervise theory).[3] It is also undisputed that school personnel reviewed surveillance footage if any incident or complaint was reported, and reviewed a portion of single day's route as part of a driver's annual evaluation.

Applying *Edwards* to the case at hand compels granting summary judgment against Plaintiffs on their failure-to-supervise claim. Plaintiffs concede that Paniagua was not totally unsupervised. And just like there was no law requiring a system to track excessive-force incidents in *Edwards*, here, it is undisputed that there is no law compelling a school to review surveillance footage before any wrongdoing is reported—or any law requiring the school to install security cameras on school buses at all. Thus, Plaintiffs had to raise a fact issue regarding a pattern of constitutional violations and cannot rely exclusively on Paniagua's sexual abuse. *Edwards*, 70 F.4th 302, 313 ("Because Edwards has identified no law that requires the City to maintain a 'system to identify and track use of force incidents,' his supervisory and disciplinary theories can succeed only if he identifies 'a pattern of similar constitutional violations.'" (citation modified)). As the Court has already found, *see supra* I.C., Plaintiffs do not introduce evidence of a pattern. And even if a

---

[3]  Plaintiffs' § 1983 claims are not premised on a policymaker's actual knowledge of abuse, but a "customary policy and failure to supervise" (Dkt. #124 at p. 18). Plaintiffs do make allegations of actual knowledge in connection with their Title IX claims, which the Court addresses below. *See infra* II.

pattern was unnecessary, summary judgment would still be required because there is no evidence that the video review team charged with supervising bus drivers is analogous to novice officers "certain to face" recurrent situations "concerning a clear constitutional duty." *Littell*, 894 F.3d at 624–25 (citation modified)). Thus, summary judgment must be granted on the element of deliberate indifference, precluding a failure-to-supervise claim.[4]

### E.      Equal Protection

Whether an equal protection claim arising out of sexual assault is independently viable in a case also asserting violations of the constitutional right to bodily integrity is uncertain. *See, e.g.*, *Doe v. Serna-Venegas*, No. MO:23-CV-00091-DC-RCG, 2025 WL 2538854, at *5 (W.D. Tex. Aug. 19, 2025), *report and recommendation adopted*, No. MO:23-CV-00091-DC, 2025 WL 2533526 (W.D. Tex. Sept. 3, 2025). Following the lead of the Fifth Circuit in *Doe v. Taylor Independent School District*, 15 F.3d 443, 458 (5th Cir. 1994), many courts in this circuit have declined to explore any potential difference between the substantive due process right to bodily integrity and an equal protection claim based on sexual assault by a state actor. *Id. at* *5–6 (collecting cases declining to address the issue).

Here, like in *Taylor*, Plaintiffs do not allege that any damages they "could recover from [Prosper ISD] based on [Paniagua's] alleged violation of [their] equal protection rights would be any more extensive than the damages that [they] could recover based on the substantive due process

---

[4]  In addition to the failure-to-train theory based on bus monitor conduct, in *Ayon*, the Western District of Texas also faced a failure-to-supervise theory based on a school district's failure to review school bus surveillance footage that would have revealed repeated instances of abuse by a bus driver. *Ayon*, 2020 WL 1536383, at *8. The court reasoned that because the plaintiff pleaded no facts "that attribute this failure to an AISD policy" or facts that "enable the Court to infer that sexual abuse was the highly predictable consequence of such a policy," the claim had to be dismissed for failure to plausibly allege deliberate indifference. *Id*. Although the case was decided at the pleading stage, *Ayon* helps demonstrate the difficulty plaintiffs face when seeking to hold a municipality liable for its failure to implement safeguards that could have prevented sexual abuse by employees.

violation." *Taylor*, 15 F.3d at 458. Nor do Plaintiffs argue that Prosper ISD can be "liable for equal protection violations predicated on [Paniagua's] sexual abuse" when it is not "liable for substantive due process violations involving the same conduct." *Id*. Therefore, this Court "need not reach the question of whether [Plaintiffs] state[] an equal protection claim." *Id*.[5] *See also*, *e.g.*, *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 540 (W.D. Tex. 2007) (citing *Taylor*, then declining "to address the distinction between Plaintiff's equal protection and substantive due process claims because it would not have any impact on the Court's legal analysis.").

Because Plaintiffs' *Monell* claims under § 1983 failed, summary judgment will be granted on the *Monell* claim founded on equal protection involving the same conduct.

\* \* \*

In sum, summary judgment must be granted as to Plaintiffs' *Monell* theories because controlling precedent does not allow a school district to be liable for the sexual abuse of employees under the facts alleged. The Court now turns to Plaintiffs' Title IX claims.

## II.    Title IX

Plaintiffs' Title IX claim fails because there is no evidence that an appropriate person at Prosper ISD knew that Paniagua was abusing the Doe Children or that a substantial risk of the abuse existed. Summary judgment will therefore be granted.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

---

[5] The relevant portions of *Taylor* dealt with a supervisor's liability for a subordinate's conduct, instead of a municipality's liability, but the "Fifth Circuit has held supervisor and municipal liability follow the same standard, as either may be liable if it 'supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens.'" *Carter ex rel. Carter v. City of Shreveport*, No. CV 17-1289, 2021 WL 217885, at \*5 (W.D. La. Jan. 21, 2021) (quoting *Taylor*, 15 F.3d at 453).

any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A school district receiving federal funds may be held liable under Title IX via a private action for damages when its employees sexually abuse students. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). But Title IX does not create vicarious liability for the acts of a district employee. *Id.* at 288. Thus, to establish liability, Plaintiffs "must demonstrate that [Prosper] ISD had actual knowledge that [the Doe Children] w[ere] at a significant risk for sexual abuse by [Paniagua] and that the school's response amounted to deliberate indifference." *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020) (per curiam) (unpublished) (citing *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358–59 (5th Cir. 2020)).

In their operative complaint, Plaintiffs expressly cast *Monell* liability and Title IX liability as alternative theories of recovery, turning on the inherent difficulty of pleading actual knowledge without discovery:

> Because of the posture of this case, Prosper ISD's refusal to share information, and Plaintiffs' inability to conduct discovery, Plaintiffs necessarily are unable to say, at the pleadings stage, whether any specific Prosper ISD administrator *actually looked at* the evidence under their noses. But even so, one of two things must be true: *Either* (1) Prosper ISD and its administrators actually, subjectively knew of the abuse as a result of looking at the evidence in their possession or by learning of it from subordinates who reported it to them; or (2) Prosper ISD and its administrators completely failed in their obligation to supervise Paniagua. Due to Prosper ISD's exclusive control over the evidence that answers this question, Plaintiffs expressly allege both factual possibilities in the alternative and as alternative legal bases for liability.
>
> * * *
>
> Plaintiffs submit that one of two things must be true: Either Prosper ISD and its administrators actually, subjectively knew of Paniagua's abuse of Janie Doe 1 and 2 (giving rise to liability under Title IX), *or* they completely failed to supervise Paniagua (giving rise to liability under 42 U.S.C. § 1983).

(Dkt. #95 at pp. 3, 10 (third emphasis added)).

23

Now, Plaintiffs have had the benefit of discovery.[6] Yet the response to the motion for summary judgment deviates from the operative complaint by alleging that *both* claims are viable. In the interest of resolving matters on the merits, the Court will disregard the fact that the operative complaint does not align with Plaintiffs' summary judgment response. The question remains, however, as to whether Plaintiffs introduced evidence to support their positions. After reviewing the evidence in the light most favorable to Plaintiffs, the Court finds that no genuine issue of material fact exists regarding an appropriate person's actual knowledge of Paniagua's abuse or a substantial risk of that abuse. Summary judgment must therefore be granted.

In *Alvin*, the district court assumed that Alvin ISD had actual knowledge of a minor's abuse and proceeded to grant summary judgment against plaintiffs on deliberate indifference grounds. *Id.* The Fifth Circuit affirmed the district court but decided to reach the actual knowledge requirement and affirm on that basis. *Id.* To do so, the Fifth Circuit first explained that Title IX's "knowledge

---

[6] The discovery includes that which Plaintiffs sought through a successful motion to compel (Dkt. #130). The Court's order on that motion also addressed one of Prosper ISD's objections to Plaintiffs' summary judgment evidence and gave Prosper ISD leave to file a supplemental brief regarding security footage that Plaintiffs implied may have been spoliated. To be clear, in response to Prosper ISD's objections, Plaintiffs had the opportunity to assert spoliation but did not do so (Dkt. #128 (responding to security footage objection without addressing Prosper ISD's argument that Plaintiffs' implication of spoliation has not been properly raised)). Plaintiffs had the opportunity to do so again when responding to Defendant's supplemental brief (Dkt. #141). But the response focuses on allegedly deleted text messages and says nothing about allegedly missing security footage. At the end of the response to the supplemental brief, Plaintiffs request that the Court issue sanctions under Federal Rule of Civil Procedure 37. There are at least two problems with this request. First, Plaintiffs do not specify what sanction they desire, citing generally to Rule 37. Thus, the Court cannot discern whether Plaintiffs request a major sanction affecting this motion for summary judgment, or a sanction that is inconsequential to summary judgment, such as attorney's fees. Second, this Court's Local Rules require requests for relief to be sought by motion with a separate proposed order. LOCAL RULE CV-7(a). In the interest of efficiency and resolving matters on the merits, however, the Court will deem Plaintiffs' request as a motion for sanctions seeking denial of the motion for summary judgment on spoliation grounds. The Court declines to grant a sanction of that magnitude. Ferguson's testimony, which Plaintiffs attach in support of the existence of deleted text messages, seems to address text messages sent after the Doe Children's outcry. In the Court's view, text messages sent by a non-policymaker *after* the outcry have no bearing on the essential elements of Plaintiffs' *Monell* or Title IX claims. If the text messages could raise a fact issue, Plaintiffs should have sought relief under Federal Rule of Civil Procedure 56(d), which allows the Court to issue any appropriate order when a party lacks information essential to oppose a motion for summary judgment. Instead, they request sanctions. To the extent Plaintiffs asks the Court to infer the existence of evidence precluding summary judgment, the request is denied.

requirement cannot be satisfied by showing that the school district *should have known* there was a substantial risk of abuse." *Id.* (emphasis added). Instead, it "requires the plaintiff to establish that the 'district actually knew that there was a substantial risk that sexual abuse would occur.'" *Id.* (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652–53 (5th Cir. 1997)). The Fifth Circuit acknowledged that the requirement is "difficult[]" to meet. *Id.* To illustrate this point, it visited other Fifth Circuit and Supreme Court precedent:

> Complaints from parents that a teacher "often made sexually suggestive comments" to students in class were "plainly insufficient" to alert school officials that he might be in a sexual relationship with a student. *Gebser*, 524 U.S. at 277, 291, 118 S.Ct. 1989. An inconclusive investigation into reports that one student spent time with a chemistry teacher at his home did not put school officials on notice that the teacher might be in a sexual relationship with another student. *Edgewood ISD*, 964 F.3d at 363–64. Even an email notifying a school district's board of trustees and superintendent that a middle school student had sexually assaulted another minor fell "far short of Title IX's stringent actual-knowledge standard" for notice of the student's possible sexual harassment of others. *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 954 (5th Cir. 2015).

*Id.*

The Fifth Circuit ultimately held that "[t]here may have been, as plaintiffs contend, 'red flags' that should have alerted the district of a substantial risk" of sexual abuse. *Id.* at 776. But despite the "abhorrent and repeated sexual abuse" that the minor in *Alvin* experienced, the Fifth Circuit held that the "law requires that the district actually knew of the risk, not just that it should have known." *Id.* It therefore affirmed the grant of summary judgment for the school district. *Id.*

Applying this precedent to the facts here, summary judgment is required. Plaintiffs' complaint alleged that discovery might reveal that the Doe Children's abuse was reported to an appropriate person who did nothing about it (Dkt. #95 at p. 3). The summary judgment evidence has revealed no such report. The complaint also alleged that discovery might reveal that an appropriate person actually looked at the surveillance footage and did nothing about it (Dkt. #95 at

p. 3). It has not. Instead, Plaintiffs argue that a jury might disbelieve the superintendent and transportation director's denial of actual knowledge (Dkt. #124 at pp. 22–23). But the law permits an issue to reach the jury only if a genuine issue of material fact exists, so once Prosper ISD denied actual knowledge, it fell on Plaintiffs to introduce evidence creating a dispute for a jury to resolve. *Byers*, 209 F.3d at 424.

Here, even assuming that teachers saw red flags pointing to sexual abuse, the evidence does not raise a fact issue regarding the relevant question: whether Prosper ISD "actually knew of the risk." *Alvin*, 840 F. App'x at 775. The same goes for the evidence showing that someone reviewed a portion of Paniagua's surveillance footage when performing his annual review and noted that his performance was "good" (Dkt. #124 at p. 24). The law requires a Title IX plaintiff not just to prove actual knowledge, but that the person with actual knowledge is an appropriate person with authority to institute corrective measures on behalf of the district. *Id.* at 776. Therefore, even if the person who reviewed the footage learned of the abuse and failed to report it, the Court is still required to grant summary judgment because the knowledge "of a teacher [or a video team] . . . does not suffice" to raise a fact issue regarding Title IX's requirements. *Id.* There is no evidence that Ferguson or any other appropriate person knew about the abuse or a substantial risk of the abuse, so the Title IX claim against Prosper ISD must fail under the applicable law.

\* \* \*

"What happened to [the Doe Children] is horrific." *Alvin*, 840 F. App'x at 776. But Title IX precedent "creates a 'high bar' to hold school districts liable for the unlawful acts of school employees." *Id.* The Court is bound to apply this precedent. Because there is no evidence that an appropriate person at Prosper ISD had actual knowledge of Paniagua's abuse (or a substantial risk

26

of that abuse) before the outcry on May 7, 2022, the Court must grant summary judgment as to Plaintiffs' Title IX claims.[7]

## CONCLUSION

It is therefore **ORDERED** that Defendant Prosper Independent School District's Motion for Summary Judgment (Dkt. #119) is hereby **GRANTED**.

It is further **ORDERED** that all claims against Defendant Prosper Independent School District are hereby **DISMISSED with prejudice**.

It is further **ORDERED** that the parties submit a proposed final judgment within **fourteen days** of the issuance of this order.

It is further **ORDERED** that Prosper Independent School District's Motion in Limine (Dkt. #134) and Plaintiffs' Opposed Motion for Leave to File Amended Witness List (Dkt. #139) are hereby **DENIED as moot**.

It is further **ORDERED** that the Clerk is directed to **CANCEL** the May 28, 2026 final pretrial conference.

**IT IS SO ORDERED.**

**SIGNED this 11th day of May, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] The Court considered the objections to the summary judgment evidence, the response to the objections, the supplemental brief, and the response and reply thereto. When making its rulings, the Court relied only on evidence that could be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2).